NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5165

APTUS COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  June 14, 2006

_____

Before RADER, GAJARSA, and DYK, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

Mr. S. Emanuel Lin d/b/a Aptus Company (Mr. Lin) appeals the decision of the United States Court of Federal Claims dismissing his complaint pursuant to Rule 12(b)(6) and Rule12(h)(3) of the Rules of the Court of Federal Claims.  Because the evidence supports the Court of Federal Claims dismissal, this court <u>affirms</u>.

I.

Mr. Lin won a contract to upgrade hydroelectric power equipment at the Saulte Ste. Marie Hydroelectric Power Plant in Michigan.  The Government terminated this contract June 26, 2000 for lack of satisfactory progress, finding Mr. Lin in default.  The Government then ordered the plaintiff's surety, Chatham Reinsurance Corp. (Chatham), to perform the remaining work.  The Government and Chatham executed a Tender

Agreement for L & S Electric, Inc. to complete the work required by the contract. As part of this agreement, Chatham paid the Government $188,877, which was the difference in the cost for L & S to complete the project and what the government agreed to pay Mr. Lin for completion of the contract. Chatham then sued Mr. Lin to recover this payment in Texas state court and obtained a judgment in the amount of $205,559.50. Chatham gave a release to Mr. Lin in return for payment of $175,000.

Mr. Lin, acting pro se, filed a lawsuit against the Government in the Court of Federal Claims on June 26, 2000. Aptus Co. v. United States, 61 Fed. Cl. 638, reconsideration denied, 62 Fed. Cl. 808, aff'd 159 Fed.Appx. 186 (Fed. Cir. 2005), cert denied, 126 S.Ct. 1921 (May 1, 2006) (Aptus I) challenging the default termination. In August 2004, the trial court rejected Mr. Lin's challenge of the default decision, finding a justifiable basis for the Government's doubts about Mr. Lin's ability to complete the project. The trial court found that Mr. Lin had committed contract violations that constituted a material breach justifying the termination for default. Id. at 661-63.

During the discovery phase of Aptus I, Mr. Lin performed a site visit to determine if L & S completed its installation according to the terms of his default contract. This site visit occurred on June 23, 2003, three years after the initiation of the law suit. At this time, Mr. Lin alleged that he became aware of additional information relating to the contract and default termination that lead him to believe he was entitled to recover money as a result of the Tender Agreement.

Mr. Lin, however, waited until October 9, 2003, to submit new claims based on the additional information. The contracting officer denied the new claims on January 15, 2004 and Mr. Lin attempted to amend his complaint for a third time to add the newly

denied claims. The trial court denied Mr. Lin's motion to amend because he had waited almost four months to submit the claims to the contracting officer, and even with extreme leniency granted to him as a result of his pro se status, the trial court found that Mr. Lin had already caused significant delays in the proceedings.

Mr. Lin did not appeal this ruling. Rather, on January 12, 2005, Mr. Lin filed a new complaint against the Government in the Court of Federal Claims. Aptus Co. v. United States, No 05-106C, (Ct. Cl, June 27, 2005) (Aptus II). In its complaint, Mr. Lin attempted to advance the claims he initially tried to bring in Aptus I but was denied. Mr. Lin alleged in Aptus II that he was entitled to recover a portion of the money the government agreed to pay L & S to complete the contract. Specifically, the allegations set forth in the Aptus II complaint include: 1) the Government permitted L & S to hire a skilled craftsman, which increased the cost of the project by $7,500 beyond Mr. Lin's original contract; 2) L & S did not complete certain elements of the contract and therefore should not have been paid in full; 3) various modifications in the contract invalidated the damages in the Tender Agreement; 4) the Government acquiesced in L & S's failure to remedy certain deficiencies which contributed to Government's decision to terminate Mr. Lin's contract for default; and 5) assignment of Mr. Lin's interests in the original contract, first to Chatham and then to L & S, violated 31 U.S.C. § 3727 (2000) and 41 U.S.C. § 15 (2000) because Chatham's Certificate of Authority as an acceptable federal surety had been revoked. Aptus II, slip op. at 3.

The Government responded on March 14, 2005, with a motion to dismiss for failure to state a claim upon which relief can be granted. Id. The Government argued

that Mr. Lin had not plead facts sufficient to set forth a basis for relief and that claim preclusion barred Mr. Lin's claims. Id.

The trial court granted the Government's motion. Regarding the fifth claim, the trial court determined that it lacked subject matter jurisdiction because the suretyship claim did not constitute a money-mandating provision under the Tucker Act. Thus, the court dismissed Mr. Lin's fifth claim pursuant to Rule 12(h)(3). Id. slip op. at 4. Regarding the remaining four claims, the trial court dismissed them as barred by claim preclusion. Id. slip op. at 5-6. Mr. Lin argued that based on the trial court's denial of his motion to amend his complaint, he was deprived of a "full and fair opportunity to litigate" his claims. Thus, Mr. Lin argued that claim preclusion should not apply. The trial court determined that the parties were the same parties who received a decision on the merits in Aptus I, and Mr. Lin's claims were based on the same transactional facts as Aptus I. Id. The trial court noted that Mr. Lin had tried to add the very same claims to Aptus I. The trial court noted that a pro se plaintiff must be afforded leniency in their representation in proceedings, but that this leniency can only be afforded so far. Id. Thus, the trial court determined that "[r]ather than wait until the conclusion of Aptus I and file another suit, plaintiff's 'proper recourse was to appeal from the denial of his motion to amend.'" Id. Mr. Lin appeals this dismissal to this court, which has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

II

This court reviews de novo the determination of whether the Court of Federal Claims properly dismissed a complaint for failure to state a claim upon which relief can be granted. Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004). The

determination of whether a claim is barred by the doctrine of <u>res judicata</u>, or claim preclusion, is also a question of law that we review <u>de novo</u>. <u>Faust v. United States</u>, 101 F.3d 675, 677 (Fed. Cir. 1996). Whether a claim is properly dismissed for lack of subject matter jurisdiction is a legal question, which this court reviews <u>de novo</u>. <u>McDonald v. United States</u>, 135 F.3d 778 (Fed. Cir. 1998). This court reviews the determinations regarding disputed jurisdictional facts upon which the Court of Federal Claims based its legal conclusion for clear error. <u>Id</u>.

"The general concept of claim preclusion is that when a judgment is rendered in favor of a party to litigation, the plaintiff may not thereafter maintain another action on the same "claim" and defenses that were raised or could have been raised by the defendant in that action below." <u>Foster v. Hallco Mfg.</u>, 947 F.2d 469, 478-79 (Fed. Cir. 1991). "A second suit will be barred by claim preclusion if: (1) there is identity of parties; (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." <u>Jet, Inc. v. Sewage Aeration Sys.</u>, 223 F.3d 1360, 1362 (Fed. Cir. 2000). This court has adopted a "transactional" analysis for determining if two claims are based upon the same set of transactional facts. <u>Foster</u>, 947 F.2d at 478-79. Thus, claim preclusion precludes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose." <u>Id.</u> (citing <u>Restatement (Second) of Judgments</u> § 24(1)).

Here, as the trial court correctly determined, the first two elements of claim preclusion are met. The parties are the same as the parties in <u>Aptus I</u>. Further, <u>Aptus I</u> was decided on the merits after an extensive trial. Concerning the last factor, Mr. Lin

argues the trial court erred in determining that Claims I-V in <u>Aptus II</u> "are based on the same set of transactional facts as those of Aptus I".[1]  See <u>Aptus II</u>, slip op. at 5. Specifically, Mr. Lin argues that claim preclusion does not apply because the issue in <u>Aptus I</u> related to the default by Mr. Lin of his contract with the Government, while the issue in <u>Aptus II</u> involved the completion of the contract by L & S Electric.  Mr. Lin argues that the facts that resulted in the <u>Aptus II</u> allegations were not learned until June 23, 2003 and thus the time period covered by the two claims are different.  <u>Aptus I</u> involved the time during which Mr. Lin worked on the contract before he defaulted, while <u>Aptus II</u> involves the time after the default in which L & S completed the project.  Mr. Lin cites <u>Florida Power & Light Company v. United States</u>, 198 F.3d 1358 (Fed. Cir. 1999), as support for his argument that his claims are not barred by claim preclusion.  There, this court explained that the modern rules of federal practice do not require a plaintiff to supplement a complaint to add a later discovered claim after an initial law suit is filed. 198 F.3d at 1360-61.  However, in <u>Florida Power</u>, the trial court went on to determine that <u>res judicata</u> [claim preclusion] did not apply because the claims were significantly different.  <u>Id</u>.  Specifically, the court held that "[t]he two sets of claims involv[ed] not only different time periods, but also different agencies, with different statutory mandates regarding pricing policies. . . . [which] at least call for a different legal analysis."  <u>Id.</u> at 1361.  This court disagrees with Mr. Lin. As found by the trial court, these claims resulted from the same transactional events.  All of these claims are a direct result of Mr. Lin's default of a contract which was the issue squarely before the trial court and

---

[1] Mr. Lin's brief makes numerous references to materials and documents that were not part of the record before the United States Court of Federal Claims.  This court will not consider arguments and evidence not raised before the Court of Federal Claims.

this court in <u>Aptus I</u>.  Thus, this court affirms the trial court's dismissal of Mr. Lin's Claims I-IV as barred by the doctrine of claim preclusion.

Finally, the trial court dismissed Mr. Lin's fifth claim alleging a violation of the Assignment of Claims Act, of 1940, 31 U.S.C. § 3727, 41 U.S.C. § 15.  Mr. Lin alleges that these provisions were violated by the Government assigning his rights to Chatham because at the time of this transfer, Chatham was not an acceptable federal surety. <u>Aptus II</u>, slip op. at 4.  The trial court held that it  lacked subject matter jurisdiction over this claim because Mr. Lin failed to identify any money –mandating provision of either 31 U.S.C. § 3727 or 41 U.S.C. § 15.  <u>Id.</u>

This court agrees.  31 U.S.C. § 3727 sets forth guidelines for the assignment of claims against the Government.  41 U.S.C § 15 constrains contractors with Government contracts from transferring their work to another party.  There are no money-mandating requirements in either of these provisions.  As this is a requirement for the Court of Federal Claims to possess jurisdiction, the trial court correctly dismissed Mr. Lin's fifth claim under Rule 12(h)(3).  That requirement was not met by Mr. Lin's claim.  Thus, this court affirms the Court of Federal Claims decision.